IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DINA JOANNE TACKETT,**

     **Plaintiff,**

                                              **Civil Action 2:14-cv-970**
**v.**                                          **Judge Michael H. Watson**
                                             **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Dina Joanne Tackett, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

### I.   BACKGROUND

Plaintiff filed her application for benefits in May 2011, alleging that she has been disabled since October 29, 2001, due to a back injury and depression. (R. at 141-48, 178.) Plaintiff's application was denied initially and upon reconsideration.

Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Valerie A. Bawolek ("ALJ") held a hearing on February 26, 2013, at which Plaintiff, who was represented by counsel, testified. (R. at 30–37.) Medical Experts Judith Brendemuehl, M.D., and Mary E. Buban, Psy.D., along with vocational expert Cecilia Thomas ("VE"), also testified. On March 15, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 8–20.) On May 30, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–5.) Plaintiff then timely commenced the instant action.

## II.  HEARING TESTIMONY[1]

**A.  Plaintiff's Testimony**

Plaintiff testified that she is married and has five children, ages 15, 12, 9, 5, and 2. (R. at 30.) She testified that she last worked on October 29, 2001, her alleged onset date. (R. at 31.) Plaintiff explained that she was injured while she was working as a laborer. She was under a table re-upholstering it and began experiencing back pain. (*Id.*) Plaintiff went to the hospital later that evening. (*Id.*) She alleges that she has had back pain since the injury occurred.

Plaintiff testified that after her injury, she experienced constant pain, muscle spasms, sleep disturbance, and bilateral leg numbness and weakness. She also testified that she has fallen many times. (R. at 32.) Plaintiff testified that she has been treated with epidural injections, physical therapy, and a TENS unit, with no "success." (*Id.*) Plaintiff stated that she needs surgery, but her doctor told her to wait because she has young children. (R. at 33.) According to

---

[1]In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged mental impairments. Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged exertional impairments.

Plaintiff, she took care of her children by herself prior to her injury.  She explained that since her injury, she receives help from her family.  (R. at 33-34.)  Plaintiff further explained that since her injury, her husband, mother, friends from church, and neighbors assist her with housework.  (R. at 34.)  She estimated that on a "good week," she is able to do housework twice per week.  (*Id.*)  She testified that she is unable to perform housework on a regular basis, however, due to her back and leg pain.  (*Id.*)  She testified that she began using a cane in 2002.  She stated that she uses the cane to prevent falling.  (R. at 34-35.)  Plaintiff estimated that since her injury, she is able to stand 15-20 minutes before experiencing shooting pain down her legs and feet; sit 10-15 minutes before her legs and feet go numb; walk a block; and lift 5 pounds.  (R. at 35-36.)

**B.** **Medical Expert**

Judith Brendemuehl, M.D., testified at the administrative hearing as to Plaintiff's physical limitations.  (R. at 37-42.)  Dr. Brendemuehl acknowledged that Plaintiff had no impairments that met or equaled the listings for the period between October 29, 2001 and March 21, 2004.  (R. at 37.)  Dr. Brendemuehl testified that during that time, Plaintiff's impairment was a back injury.  (*Id.*)  Dr. Brendemuehl opined that, from sometime in 2002, the records supported a sedentary to light level of activity.  (R. at 38-40.)  Dr. Brendemuehl opined that Plaintiff would work "better at bench height," where she would not have occasional bending, crouching, and stooping, and would have "more limited truncal activity."  (R. at 40.)  Dr. Brendemuehl also opined that Plaintiff should only occasionally balance and climb stairs/ramps, and never climb ladders or scaffolding.  Dr. Brendemuehl further opined that Plaintiff should avoid concentrated exposure to heat, cold, vibration, all heights, and hazardous machinery.  (R. at 40.)

When examined by Plaintiff's counsel, Dr. Brendemuehl testified that Plaintiff had a physical basis for pain, but Plaintiff's complaints were out of proportion to the objective evidence in the record. Dr. Brendemuehl stated that the record supported a moderate level of pain. She noted that multiple instances exist in the record where Plaintiff reported that her pain was better for weeks at a time, but depending on her activity level, it would get worse or exacerbate. Dr. Brendemuehl testified that the record supports a degree of pain, but perception of pain is subjective and causes a variation. Finally, Dr. Brendemuehl acknowledged that activity does increase back pain. (R. at 41.)

**C.     Psychological Expert**

Mary E. Buban, Psy.D., testified at the administrative hearing as to Plaintiff's mental limitations. (R. at 42- 45.) Dr. Buban testified that there were no mental impairments for the period from October 2001 through March 2004. All of the records for mental health treatment began after May 2005. (R. at 42.)

### III.     MEDICAL RECORDS

**A.     Bureau of Workers' Compensation ("BWC") file review**

On January 20, 2002, Dr. Boyer reviewed Plaintiff's file to address the motion filed for inclusion of an additional condition of posterior paracentral disc protrusion at L5-S1. Dr. Boyer concluded the file supports posterior paracentral disc protrusion at L5-S1. (R. at 314.)

**B.     Gary Rea, M.D.**

Plaintiff consulted with a surgeon, Dr. Rea, on March 11, 2002. On examination, Dr. Rea found that Plaintiff had a full range of motion of her neck, shoulders, elbows and wrists. Dr. Rea noted that Plaintiff had a positive straight-leg test. He further found that external rotation of the

hip bothers Plaintiff, mostly in her legs. He noted that she had tenderness in the greater trochanteric region bilaterally. On examination, Plaintiff was able flex to almost 90 degrees, but it caused her pain in her back. He noted that her gait and station were normal. Dr. Rea opined that the disc protrusion at L5-S1 was possibly causing some of her symptoms, but her pain was primarily in her back. He believed surgery at that point would not likely give her substantial relief of her symptoms. (R. at 310-11.)

**C.     A. Guido Hita, M.D.**

On March 14, 2002, Dr. Hita performed an Independent Medical Examination ("IME") at the request of the BWC. (R. at 241-45.) Plaintiff reported that she suffered an industrial injury on October 29, 2001, while under a table re-upholstering it. Dr. Hita noted that emergency room notes, dated October 30, 2001, document that Plaintiff had back pain radiating to the lower buttock and right lower extremity, and that she was treated with muscle relaxants. (R. at 241-42.)

Dr. Hita further noted that a November 8, 2001MRI of Plaintiff's lumbar spine revealed "anomalies of segmentation, and a transitional vertebrae at the lumbosacral junction with desiccation of the L5-S1 intervertebral disc with a small focal left paracentral posterior disc protrusion at LS-S1 which did not result in significant spinal stenosis, but did produce minimal narrowing of the left L5-S1 neural foramen." (R. at 242.) Dr. Hita stated that "the radiologist noted that it was conceivable that this could impinge upon the left S1 nerve root, but he makes the observation that the patient complains of right sided radicular pain only." *Id.*

Dr. Hita further stated that Plaintiff rated her pain on the best days at 3/10 and on the bad days at 8/10, but she stated the pain was never absent. (R. at 242.) Plaintiff exhibited moderate

pain during the examination. Her back appeared to be supple with bilateral lumbar spasm and tenderness. Reflexes were present in both knees and, although present in both ankles, they were very slow. He found that the Patrick test was positive in the left sacroiliac joint and that Plaintiff's gait was frontally antalgic. (*Id.*) Dr. Hita opined that Plaintiff was not at Maximum Medical Improvement (MMI) and that she needed epidural steroid injections. Dr. Hita concluded that Plaintiff's "afflictions are legitimate and consistent with radiculopathy produced by the L5–S1 protruding disc." (R. at 242-43.)

**D.     Ronald G. Hawes, M.D.**

Dr. Hawes performed an IME at the request of the BWC on July 25, 2002. (R. at 247-51.) On examination, Plaintiff was comfortable, alert, and cooperative. She was initially evaluated in the seated position where neurologic testing revealed a slightly diminished left knee jerk and diminished ankle reflexes at both her right and left lower extremities. Dr. Hawes noted that straight-leg raising was performed well in the seated position and that strength testing revealed good muscle tone. Dr. Hawes noted that Plaintiff exhibited no obvious signs of muscle atrophy. Plaintiff demonstrated weakness in the extensor hallucis longus muscle and tendon, which adversely affected her great toe and forefoot of each lower extremity to an equal degree. Dr. Hawes also noted some guarding and facial grimacing, which he stated represents pain behavior. He observed that her range of motion was reduced in forward bending posterior extension, as well as on the right and left lateral side during bending. He noted that palpation revealed some tenderness in the left paraspinous region, extending into the left sacroiliac region. Finally, her gait pattern and balance were noted to be normal. (R. at 248.) Dr. Hawes concluded

that Plaintiff had "reached a maximum level of medical improvement." (R. at 249.) He opined that Plaintiff is capable of light duty or sedentary work. (*Id.*)

**E.     Careworks**

In August 2002, Plaintiff complained of leg weakness. On a work release form, it was noted that Plaintiff could not return to full duty; could not return to a temporary light duty assignment; could not work an eight-hour day; and was able to work 0-2 hours per day and lift 0-10 pounds. The physician concluded that Plaintiff was unable to return to her prior employment. (R. at 307.) By November 2002, Plaintiff complained of right arm weakness. (R. at 300.)

**F.     Thomas N. Markham, M.D.**

Dr. Markham performed an IME at the request of the BWC on August 14, 2003. (R. at 256-57.) Plaintiff exhibited tenderness over the left paraspinous area at L3-S1, a slow antalgic gait, straight-leg raising positive on the left at 60 degrees with back pain, and weak dorsiflexion of the left great toe. Dr. Markham recommended a 6 percent whole person impairment. (R. at 257.)

On September 8, 2003, Plaintiff's primary care physician, Dr. Westmoreland, prepared a letter to the BWC objecting to Dr. Markham's August 14, 2003 findings, because Dr. Markham did not note that Plaintiff was seven months pregnant during the examination. (R. at 259.)

**G.     Bienvenido D. Ortega, M.D.**

Dr. Ortega performed an IME at the request of the BWC on September 8, 2005. (R. at 322-24.) Examination of Plaintiff's spine revealed no discoloration of the skin, scarring, swelling, changes in lordosis, localized tenderness, muscle spasm or guarding. He noted that she was somewhat careful walking, but she not really antalgic. He noted that Plaintiff had difficulty

squatting. He found that she exhibited positive Waddell signs, however.  Dr. Ortega noted that she had difficulty getting on and off of the examining table and putting on her boots, but she was able to cross her legs while putting on her boots.   He noted that her deep tendon reflexes were 2+ and equal throughout.  (R. at 323.)  Dr. Ortega concluded that because Plaintiff was in the process of getting epidural steroid injections, she had not reached MMI.  Dr. Ortega also noted that she may not be qualified physically to be a laborer.  He opined that Plaintiff should avoid any employment requiring prolonged standing, sitting, and lifting.  He concluded that she is capable of light duty work up to a medium type of capacity.  (R. at 324.)

**H.**     **Pleasant Valley Hospital**

Plaintiff presented to the emergency room on April 8, 2005, with complaints of injuring her right foot while splitting logs at home.  (R. at 349-53.)

**I.**     **Doctor's Hospital**

An MRI taken of Plaintiff's lumbar spine on March 9, 2005, showed the LS-S1 posterior broad disk protrusion without significant thecal sac or S1 nerve root compressive effect. No significant foraminal encroachments or existing nerve root compressive effects were noted.  (R. at 330-31.)

**J.**     **State Agency Evaluation**

On August 16, 2011, state agency physician, Lynne Torello, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity for the relevant time period.  (R. at 57-61.) Dr. Torello opined that Plaintiff could lift and/or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk about four hours in a workday; and sit for about four hours in a workday. (R. at 59.)  Dr. Torello opined that Plaintiff could never climb ladders, ropes, or

scaffolds; and could occasionally climb ramps/stairs, stoop, balance, kneel, crawl, or crouch. Dr. Torello based Plaintiff's postural limitations on her herniated lumbar disc, left lumbar radiculopathy, lumbar spondylosis, myelopathy, back and hip pain, joint sprain, and strain arthropathy. (R. at 60.) Dr. Torello also found that Plaintiff should avoid concentrated exposure to hazards (machinery, heights, etc.). (R. at 61.) On October 25, 2011, Linda Hall, M.D., reviewed Plaintiff's records upon reconsideration and essentially affirmed Dr. Torello's assessment. (R. at 70-71.)

## IV. THE ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2004. (R. at 13.) Accordingly, Plaintiff was required to establish disability on or before March 31, 2004 to be entitled to a period of disability benefits. At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

substantially gainful activity from her alleged onset date of October 29, 2001 through her date last insured. (*Id.*) The ALJ found that through her date last insured, Plaintiff had the severe impairment of degenerative disc disease. (*Id.*) She further found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [T]hrough the date last insured, the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She could only occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl, and could never climb ladders, ropes, and scaffolds. She must avoid concentrated exposure to extreme heat, extreme cold, vibration, and all hazards including unprotected heights and dangerous machinery.

(*Id.*) The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R. at 15.) The ALJ assigned "significant weight" to the opinions of the state agency reviewing physicians, Drs. Torello and Hall. The ALJ gave "greater weight" to the opinion of Dr. Brendemuehl. (R. at 17.) Relying on the VE's testimony, the ALJ concluded that Plaintiff is able to perform jobs that exist in significant numbers in the national economy. (R. at 22.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

---

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.     ANALYSIS

Plaintiff raises several contentions in her Statement of Errors. First, she contends that the ALJ's reliance on the opinion of Dr. Brendemuehl regarding the severity of Plaintiff's

impairment was misplaced. Second, Plaintiff contends that the ALJ drew conclusions at step three and step four that were not supported by the medical evidence she cited. Finally, Plaintiff asserts that the ALJ failed to follow the requirements of SSR 96-7p and 20 C.F.R. §404.1529(c)(3) in finding that Plaintiff's pain allegations were not entirely credible. The Undersigned concludes that the ALJ erred in failing to consider all of the evidence in the record in determining whether Plaintiff met Listing 1.04. This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error. Thus, the undersigned need not resolve the alternative bases Plaintiff asserts to support reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignments of error if appropriate.

     Plaintiff contends that the ALJ failed to address evidence at step three that supported a finding that she either met or medically equaled Listing 1.04, specifically, subsection A. She asserts that the ALJ's failure to thoroughly analyze her physical impairments in relation to Listing 1.04 amounts to skipping step three of the evaluation process. She cites to *Reynolds v. Commissioner of Social Security* to support her contention that this case should be remanded for further review of the evidence at step three. 424 F. App'x 411, 416 (6th Cir. 2011).

     A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed

Impairment." *Reynolds*, 424 F. App'x. at 415. The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). It is not sufficient to come close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

"The Sixth Circuit has declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'" *Wischer v. Comm'r of Soc. Sec.*, No. 13-cv-810, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015) (quoting *Forrest v. Comm'r of Soc. Sec.,* 591 F. App'x 359, 365 (6th Cir. 2014)). The Sixth Circuit has found an ALJ's conclusory findings at step three to be harmless error where the plaintiff did not put forth sufficient evidence to demonstrate that his or her impairments met or medically equaled the severity of the listing. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014); *but see Forrest,* 591 F. App'x at 365 (citing *Reynolds*, 424 F. App'x at 416 (finding that an ALJ erred by providing no reasons to support his finding that a specific listing was not met, and holding that the error was not harmless because it was possible that the claimant has put forward sufficient evidence to meet the listing)). Thus, in instances where the ALJ does not properly evaluate a listing, the Court must "determine whether the record evidence raises a substantial question as to [Plaintiff's] ability to satisfy each requirement of the listing." *Smith-*

13

*Johnson,* 579 F. App'x at 432-33. The claimant "must point to specific evidence that demonstrates he [or she] reasonably could meet or equal every requirement of the listing." *Id.* at 432. "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

Accordingly, contrary to Plaintiff's assertion, remand is not required in every instance in which an ALJ's findings at step three are cursory. Rather, the Plaintiff must first raise a substantial question as to whether her back impairment meets or medically equals in severity the requirements of a Listing. In this instance, however, it is apparent that the ALJ did not consider all of the evidence in determining whether Plaintiff met Listing 1.04. Further, Plaintiff has raised a substantial question as to whether she could reasonably meet every element of Listing 1.04. Listing 1.04(A), for disorders of the spine, provides as follows:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

20 C.F.R. § 404, Appendix 1, § 1.04(A).

For her step three determination regarding whether Plaintiff met Listing 1.04, the ALJ found as follows:

>  . . . The [Plaintiff's] degenerative disc disease does not meet or medically equal the criteria of listing 1.04 because there is no evidence of (A) nerve root compression characterized by neuron-anatomic distribution of pain, limitations of motion of the spine, motor loss or atrophy with associated muscle weakness or

14

> muscle weakness accompanied by sensory or reflex loss, and with regard to lower back, no positive straight-leg raising test, or (B) social arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by an appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than every two hours, or (C) lumbar spinal stenosis resulting in pseudoclaudation, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively.

(R. at 14.)

A review of the ALJ's step three findings demonstrates that the ALJ did not consider all of the objective evidence from the relevant time period in determining that Plaintiff did not meet or medically equal Listing 1.04(A). First, the ALJ did not mention Plaintiff's 2001 MRI that revealed "conceivable impingement upon the S1 nerve root." (R. at 395-96.) This evidence demonstrates that Plaintiff could possibly demonstrate nerve root compression. In her Memorandum in Opposition, the Commissioner counters that this evidence does not constitute "definitive acceptable diagnostic imaging" to show that Plaintiff had compromise or impingement of a nerve root. The Commissioner's *post hoc* rationalization, however, cannot cure the ALJ's failure to acknowledge this evidence, resolve any inconsistencies related to it, and explain why it does not meet the Listing.

Further, in discussing whether Plaintiff met Listing 1.04, the ALJ found that the record contained "no positive straight-leg raising." (R. at 14.) As Plaintiff points out, however, Plaintiff had positive straight-leg raise tests on March 11, 2002 and August 14, 2003. *Id.* (citing R. at 257, 310.) Additionally, on September 23, 2002, a straight-leg raising test was positive at approximately 25 degrees on active and passive movement of the left lower extremity. (R. at 408.) On examination on April 25, 2005, although outside of the relevant timeframe, straight-leg

raise testing was again positive on the left side. (R. at 487.) While Plaintiff had negative straight-leg raise tests on other occasions, it was inaccurate for the ALJ to conclude that Plaintiff had *no* negative straight-leg raise tests. Accordingly, it appears that the ALJ did not consider all of the evidence in the record in deciding that Plaintiff did not meet Listing 1.04. Furthermore, the error is not harmless because this evidence could possibly fulfill the requirement of straight-leg raise in both the sitting and supine position. The ALJ must review this evidence to determine if the Listing is met.

Finally, Plaintiff asserts that several examiners noted limitation of motion and complaints of radiating pain. She further asserts that in August and November of 2002, she was noted to have leg and arm weakness, which are indications of neurological impairments. (citing *Id.* (citing R. at 300, 308.) Further, the record includes evidence that Plaintiff had diminished reflexes. (R. at 242, 248.) Given that Plaintiff has put forward specific evidence that she could possibly meet the listing, remand is required for further consideration.

The Commissioner asserts that the ALJ properly relied on Dr. Brendemuehl's opinion in determining that Plaintiff did not meet the Listing. While the ALJ properly considered the opinion of Dr. Brendemuehl, she was also required to consider the whole record. Moreover, Dr. Brendemuehl also failed to specifically mention any of the positive straight-leg raise tests or that 2001 MRI revealed "conceivable" impingement on Plaintiff's nerve root at S1 in her testimony. Accordingly, because the ALJ failed consider all of the relevant evidence in rendering her decision, and because Plaintiff presented specific evidence from which it was possible for the ALJ to find that she meets or equals the Listing, the ALJ was required to evaluate the evidence and articulate the reasons why the Listing was not met. Here, requiring the ALJ to articulate her

reasons at step three "is not merely a formalistic matter of procedure, for it is possible that the evidence [Plaintiff] put forth could meet this listing." *Reynolds*, 424 F. App'x at 416. "In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.0[4] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.*

Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's Decision and **REMAND** this case back to the Commissioner and the ALJ for further fact find and clarification of her findings at step three.

## VII. CONCLUSION

Due to the error outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: August 17, 2015                                                /s/ *Elizabeth A. Preston Deavers*
                                                                                     Elizabeth A. Preston Deavers
                                                                                     United States Magistrate Judge